[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-11033

_____

D. C. Docket No. 03-20482-CV-FAM

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 27, 2009
THOMAS K. KAHN
CLERK

JACK KING, as personal representative of the
Estate of Jessica King, deceased,

Plaintiff
Cross-Appellee,

BARBARA BREGA,
ANETTE FORSMAN, individually and/or as personal
representative and/or as the Person legally authorized
under applicable law to bring this wrongful death case for
herself, all potential beneficiaries and/or The Estate of
Robin Forsman, deceased, *et al.*,

Plaintiffs-Appellants,

versus

CESSNA AIRCRAFT CO.,
a Kansas corporation,

Defendant-Appellee
Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(March 27, 2009)

Before DUBINA, BLACK and FAY, Circuit Judges.

PER CURIAM:

Sixty-nine European plaintiffs appeal the district court's order dismissing their case against Cessna Aircraft Company on the basis of *forum non conveniens*. We find no abuse of discretion and therefore affirm.

## I.  BACKGROUND

This case arises out of a tragic plane crash that occurred at Linate Airport in Milan, Italy, on October 8, 2001.  On that foggy morning, a private Cessna jet operated by Air Evex, a German charter company, made a wrong turn and taxied toward an active runway, causing it to collide with Scandinavian Airlines Flight 686, which was just taking flight.  One hundred eighteen people died, including everyone on board both planes and four people on the ground, and others on the ground were injured.

In March 2003, a complaint was filed against Cessna Aircraft Company (Cessna) in the Southern District of Florida by the King family, acting as personal representatives of the estate of Jessica King (King Plaintiffs).  Thereafter, 69 European plaintiffs (European Plaintiffs) brought suits against Cessna, which were consolidated with the King Plaintiffs' case for administrative purposes.  On October 21, 2005, the district court granted in part Cessna's motion to dismiss the case as to the European Plaintiffs on *forum non conveniens* grounds, denied in part the motion with regard to the King Plaintiffs, and stayed the King Plaintiffs' case

2

pending resolution of Italian disputes relating to the European Plaintiffs. *King ex rel. Estate of King v. Cessna Aircraft Co.*, 405 F. Supp. 2d 1374, 1381 (S.D. Fla. 2005). After both groups of plaintiffs appealed, we vacated the district court's stay and dismissal orders and remanded the case. *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1173 (11th Cir. 2007). Without expressing any view on the correctness of the district court's *forum non conveniens* analysis, we instructed the district court to consider whether, knowing "it could not avoid dual proceedings by staying the *King* case, it might have dismissed all of the plaintiffs, including King, or allowed all of the plaintiffs to proceed here, or perhaps pursued some other avenue." *Id.*

On remand, Cessna renewed its motion to dismiss both the King Plaintiffs' and European Plaintiffs' complaints on the basis of *forum non conveniens*. The district court "elect[ed] to 'pursue some other avenue'" and, for the reasons it previously gave, granted in part the motion to dismiss with regard to the European Plaintiffs and denied it in part with regard to the King Plaintiffs. *King v. Cessna Aircraft Co.*, No. 03-20482, 2008 WL 276015, at *2 (S.D. Fla. Jan. 31, 2008). On February 11, 2008, Cessna filed a motion to amend the judgment, asking the district court to "certify its decision to dismiss the [European Plaintiffs] as a final judgment" pursuant to Fed. R. Civ. P. 54(b) and "include a certificate for

3

interlocutory review pursuant to 28 U.S.C. § 1292(b)" of the portion of the order denying the motion to dismiss the King Plaintiffs. The district court issued a final judgment pursuant to Rules 54 and 58, but denied Cessna's motion for certification under § 1292(b). The European Plaintiffs appealed their dismissal, and Cessna filed a cross-appeal of the order "to the extent said order . . . denied Cessna's motion to dismiss the claims of plaintiff Jack King."

## II. JURISDICTION

Dismissal of a suit on the basis of *forum non conveniens* is a final, appealable order. *Sigalas v. Lido Mar., Inc.*, 776 F.2d 1512, 1516 (11th Cir. 1985). The district court did not consolidate the European Plaintiffs' case with the King Plaintiffs' case for all purposes, so the European Plaintiffs can appeal the dismissal of their case without waiting for a final determination of the King Plaintiffs' case. *See Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046, 1048-49 (11th Cir. 1989). The district court's order is final as to the European Plaintiffs, so we have jurisdiction to review their appeal.

We do not, however, have jurisdiction to review Cessna's cross-appeal. Unlike the main appeal, the denial of a motion to dismiss on the basis of *forum non conveniens* is not a final order. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 529, 108 S. Ct. 1945, 1953 (1988). Furthermore, we cannot infer the district

4

court intended to certify for immediate review the denial of the motion to dismiss the King Plaintiffs. The motion for entry of a Rule 54(b) certification filed by Cessna asked for a Rule 54(b) certification only with regard to the dismissal of the European Plaintiffs, and the district court denied Cessna's request for certification of that denial under 28 U.S.C. § 1292(b). Cessna argues this Court has pendent appellate jurisdiction to review its cross-appeal. We disagree.

Pendent appellate jurisdiction is present when a nonappealable decision is "inextricably intertwined" with the appealable decision or when "review of the former decision [is] necessary to ensure meaningful review of the latter." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 51, 115 S. Ct. 1203, 1212 (1995); *see also Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1335 (11th Cir. 1999). Under these guidelines, such jurisdiction can be present even when the pendent appeal involves a party not in the main appeal.[1] Still, the Supreme Court has

---

[1] The King Plaintiffs argued *Swint* absolutely bars "pendent party jurisdiction"—*i.e.,* pendent jurisdiction over a party not involved in the main appeal. However, the appropriate inquiry under *Swint* is not whether the pendent appeal involves a different *party* than is in the main appeal but whether the *issues* of the nonappealable decision are "inextricably intertwined" with the appealable decision or when "review of the former decision [is] necessary to ensure meaningful review of the latter." *See Swint*, 514 U.S. at 51, 115 S. Ct. at 1212. Indeed, the Supreme Court, our Circuit, and nearly every other court of appeals has exercised pendent appellate jurisdiction over closely related issues even when the pendent appeal involved parties not involved in the main appeal. *See Clinton v. Jones*, 520 U.S. 681, 707 n.41, 117 S. Ct. 1636, 1651 n.41 (1997) (affirming jurisdiction to review Paula Jones' cross-appeal as pendent to President Clinton's immunity appeal even though Jones' appeal involved a party who was not

signaled that pendent appellate jurisdiction should be present only under rare circumstances. *See Johnson v. Jones*, 515 U.S. 304, 318, 115 S. Ct. 2151, 2159 (1995) (indicating pendent appellate jurisdiction is only appropriate "sometimes"); *Swint*, 514 U.S. at 49-50, 115 S. Ct. at 1211 (expressing concern that "a rule loosely allowing pendent appellate jurisdiction would encourage parties to parlay . . . collateral orders into multi-issue interlocutory appeal tickets"). As noted in *Swint*, a more expansive exercise of such jurisdiction would undermine the statutory scheme governing interlocutory appeals. *Swint*, 514 U.S. at 45-50, 115

---

involved in the immunity appeal); *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1358-59 (11th Cir. 2008) (exercising jurisdiction to review a grant of summary judgment pertaining to all defendants because it "provided the basis for the injunction" entered against and appealed by a few of the defendants); *see also Global NAPs, Inc. v. Mass. Dep't of Telecomms. & Energy*, 427 F.3d 34, 43 (1st Cir. 2005); *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 22 n.1 (2d Cir. 1995); *In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 382 (3d Cir. 1997); *Mattox v. City of Forest Park*, 183 F.3d 515, 523-24 (6th Cir. 1999); *Greenwell v. Aztar Ind. Gaming Corp.*, 268 F.3d 486, 491 (7th Cir. 2001); *Eagle v. Morgan*, 88 F.3d 620, 628 (8th Cir. 1996); *Huskey v. City of San Jose*, 204 F.3d 893, 904 (9th Cir. 2000); *Moore v. City of Wynnewood*, 57 F.3d 924, 929 (10th Cir. 1995); *NAACP v. U.S. Sugar Corp.*, 84 F.3d 1432, 1436 (D.C. Cir. 1996).

In cases with the same factual scenario as *Swint*—an official immunity appeal in which there was an appeal by another party who could not assert official immunity—we have declared there was no "pendent party jurisdiction." *See, e.g., Hudson v. Hall*, 231 F.3d 1289, 1292 n.1 (11th Cir. 2000); *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997) (per curiam); *Pickens v. Hollowell*, 59 F.3d 1203, 1208 (11th Cir. 1995). Although we interpreted *Swint* to bar pendent party jurisdiction under those circumstances, the Supreme Court left open the possibility for such jurisdiction in other, albeit narrow, contexts. *See Swint*, 514 U.S. at 50-51, 115 S. Ct. at 1212 (declining to "definitively or preemptively settle . . . whether or when it may be proper . . . to review, conjunctively, related rulings that are not themselves independently appealable"); Charles Alan Wright & Arthur R. Miller, 16 Federal Practice & Procedure § 3937 (2008).

6

S. Ct. at 1209-11; *see also* 28 U.S.C. § 1292(b), (e); *Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 679 (D.C. Cir. 1996) (noting the many factors that weigh against exercising pendent appellate jurisdiction).  Our Circuit has found pendent appellate jurisdiction in only limited factual scenarios.

In *Fox v. Tyson Foods, Inc.*, we found there was pendent jurisdiction to review those portions of an otherwise nonappealable collective action order the district court relied on when denying the motion to intervene that was appealed. 519 F.3d 1298, 1302 (11th Cir. 2008); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1365 (11th Cir. 1997) (exercising pendent jurisdiction to review an otherwise nonappealable compel order because the appealed sanctions order was issued in part for the defendant's purported violation of the compel order).  We expressly determined there was no jurisdiction, however, to review findings in the collective action order upon which the district court did not rely. *Fox*, 519 F.3d at 1302.  In *United States v. Lopez-Lukis*, we exercised pendent appellate jurisdiction over an otherwise nonappealable order striking a paragraph of the indictment because the strike was "closely related to [the district court's] exclusion of the Government's evidence" that was on review.  102 F.3d 1164, 1167 n.10 (11th Cir. 1997).  We reasoned that "review of the evidentiary ruling

7

necessarily implicate[d] review of the order striking [the paragraph] from the indictment" because "[b]oth orders resulted from the same determination[.]" *Id.*

Importantly, we have found such jurisdiction did not exist when resolution of the nonappealable issue was not necessary to resolve the appealable one. *See Summit Med. Assocs.*, 180 F.3d at 1335 ("[W]e may resolve the Eleventh Amendment immunity issue here without reaching the merits of standing[, so t]hese issues are neither 'inextricably intertwined' nor 'necessary to ensure meaningful review' of one another."); *Moniz v. City of Fort Lauderdale*, 145 F.3d 1278, 1281 n.3 (11th Cir. 1998) ("Because we may resolve the qualified immunity issue in this case without reaching the merits of appellants' challenge to . . . standing, . . . we conclude that the latter issue . . . does not fall within our pendent appellate jurisdiction under *Swint*."); *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997) (declining pendent appellate jurisdiction because the qualified immunity issue could be resolved "without reaching the merits of the remaining questions" raised by the parties).

In the Eleventh Circuit, we have never exercised pendent appellate jurisdiction to review an issue like the one raised by the cross-appeal. The district court did not base its decision of whether to dismiss the European Plaintiffs on its

decision as to the King Plaintiffs. *See King ex rel. Estate of King*, 405 F. Supp. 2d at 1378-81 (cited by *King*, 2008 WL 276015, at *2); *cf. Fox*, 519 F.3d at 1302; *Chudasama*, 123 F.3d at 1365. The orders did not result from the same determination because, although some of the factors in the *forum non conveniens* analysis applied equally to both the European Plaintiffs and the King Plaintiffs, the district court's order clearly shows the analysis was conducted separately for both groups. *See King ex rel. Estate of King*, 405 F. Supp. 2d at 1378-81 (cited by *King*, 2008 WL 276015, at *2); *cf. Lopez-Lukis*, 102 F.3d at 1167 n.10. Furthermore, a determination of the propriety of the district court's refusal to dismiss the King Plaintiffs is not necessary to resolve the propriety of its decision to dismiss the European Plaintiffs for *forum non conveniens*. *See Summit Med. Assocs.*, 180 F.3d at 1335; *Moniz*, 145 F.3d at 1281 n.3; *Harris*, 105 F.3d at 595. For these reasons, we will review the European Plaintiffs' appeal but we do not have jurisdiction to review Cessna's cross-appeal.

## III. STANDARD OF REVIEW

A district court's *forum non conveniens* determination "may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing

9

of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S. Ct. 252, 266 (1981). Specifically, when applying abuse of discretion review, the Supreme Court has instructed appellate courts not to "los[e] sight of this rule, and substitute[ their] own judgment for that of the District Court." *Id.*, 102 S. Ct. at 266-67.

## IV.  DISCUSSION

When it made its motion for dismissal on grounds of *forum non conveniens*, Cessna must have demonstrated "that (1) an adequate alternative forum [was] available, (2) the public and private factors weigh[ed] in favor of dismissal, and (3) the plaintiff[s could] reinstate [their] suit in the alternative forum without undue convenience or prejudice." *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001). The Supreme Court outlined a number of private and public interest factors for courts to consider in a *forum non conveniens* determination. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S. Ct. 839, 843 (1947). In *Gilbert*, the Court listed these factors in detail:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical

10

problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* (footnote omitted).

These factors are not exhaustive or dispositive, and courts are free to be flexible in responding to cases as they are presented. *Sigalas*, 776 F.2d at 1519. A trial court will look at the private interests first and then, if the balance of the private interests are found "to be in equipoise or near equipoise," it will "determine whether or not factors of *public* interest tip the balance in favor of a

11

trial in a foreign forum." *See La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983).

*A. Availability and Adequacy of the Italian Forum*

The defendant bears the burden of demonstrating an adequate alternative forum is available. "Availability and adequacy warrant separate consideration." *Leon*, 251 F.3d at 1311. Ordinarily, an alternative forum is available "when the defendant is 'amenable to process' in the other jurisdiction." *Piper*, 454 U.S. at 255 n.22, 102 S. Ct. at 265 n.22 (citation omitted). An alternative forum is adequate if it provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries. *See id.* "An adequate forum need not be a perfect forum," but it must provide a satisfactory remedy. *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001).

In this case, Italy is an available forum because Cessna is willing to submit to jurisdiction and is amenable to process there. In declaring Italy an adequate forum, the district court noted Italian courts have addressed similar cases and awarded satisfactory remedies. Both parties agree Italian law provides the rule of decision regardless of whether the claims are litigated in Milan or Miami. Although they disagree over whether Cessna will be found liable to the European

12

Plaintiffs under Italian law, Italian tort law provides the plaintiffs with comparable remedies for their injuries. *See, e.g., Membreno v. Costa Crociere S.P.A.*, 425 F.3d 932, 937 (11th Cir. 2005) (recognizing Italy as an adequate forum for tort claims). For these reasons, we find the district court did not abuse its discretion in finding Italy was an adequate alternative forum for the European Plaintiffs' claims.

## B. *Private Interest Factors*

With regard to weighing the private interests, a "plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508, 67 S. Ct. at 843. The presumption in favor of the plaintiff's forum choice is strongest when the plaintiff is a United States citizen, resident, or corporation. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004). A foreign plaintiff's choice of forum, however, is a weaker presumption that receives less deference. *Piper*, 454 U.S. at 256, 102 S. Ct. at 266; *SME Racks*, 382 F.3d at 1101; *Ford v. Brown*, 319 F.3d 1302, 1307 (11th Cir. 2003); *Leon*, 251 F.3d at 1315. The European Plaintiffs point out a majority of them are from countries having bilateral treaties with the United States that accord them "no less

favorable" access to U.S. courts to redress injuries caused by American actors.[2]

Thus, they argue, the district court erred in giving their choice less deference. We disagree.

The Second Circuit in *Farmanfarmaian v. Gulf Oil Corp.*, 588 F.2d 880 (2d Cir. 1978), concluded a foreigner's right to sue in the United States is not of a lesser magnitude than an American's right when a treaty exists between the two countries giving a foreigner "no less favorable" access to the other country's courts. *Id.* at 882. However, in a later case, *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003), the Second Circuit further explained the level of deference that would be given to a foreign plaintiff's choice of forum:

> Even assuming that, by treaty, plaintiffs were entitled to access American courts on the same terms as American citizens . . ., our case law does not support plaintiffs' assertion that such a treaty would require that their choice of forum be afforded the same deference

---

[2] The European Plaintiffs represent 21 Swedish citizens, 19 Italian citizens, 19 Danish citizens, 4 Finnish citizens, 3 Norwegian citizens, 1 Romanian citizen, and 1 British citizen. There is also one Italian personal injury claimant. Those representing the Italian and Danish decedents and the Italian personal injury claimant—39 of the 69 plaintiffs—are entitled by treaty to "no less favorable" treatment than an American national when suing in U.S. courts. *See* Treaty of Friendship, Commerce and Navigation, U.S.-Italy, art. V.4, July 26, 1949, 63 Stat. 2255, 1949 WL 37628; Treaty of Friendship, Commerce and Navigation, U.S.-Denmark, arts. V.1 & XXII.1, July 30, 1961, 12 U.S.T. 908, 1961 WL 62672. Eight others—representing the Finns, Norwegians, and Romanian—are entitled to "freedom of access" or "access" to U.S. courts. Treaty of Friendship, Commerce and Consular Rights, U.S.-Finland, art. I, Aug. 10, 1934, 49 Stat. 2659, 1934 WL 29046; Treaty of Friendship, Commerce and Consular Rights, U.S.-Norway, art. I, Sept. 15, 1932, 47 Stat. 2135, 1932 WL 31050; Agreement on Trade Relations between the United States and Romania, U.S.-Romania, arts. IV.2 & V.2, Aug. 3, 1975, 26 U.S.T. 2605, 1975 WL 165548.

afforded to a U.S. citizen bringing suit in his or her home forum. Such a proposition impermissibly conflates citizenship and convenience . . . .

A court considering a motion for dismissal on the grounds of *forum non conveniens* does not assign "talismanic significance to the citizenship or residence of the parties," . . . and there is no inflexible rule that protects U.S. citizen or resident plaintiffs from having their causes dismissed for *forum non conveniens*. . . .

[A]ppellants cannot successfully lay claim to the deference owed an American citizen or resident suing in her home forum. Plaintiffs are only entitled, at best, to the lesser deference afforded a U.S. citizen living abroad who sues in a U.S. forum.

*Id.* at 73 (citations omitted). This analysis makes clear that although citizenship often acts as a proxy for convenience in the *forum non conveniens* analysis, the appropriate inquiry is indeed convenience.

In this case, then, the lesser deference given by the district court to the European Plaintiffs' choice of forum was consistent with the treaty obligations of the United States. Just as it would be less reasonable to presume an American citizen living abroad would choose an American forum for convenience, so too can we presume a foreign plaintiff does not choose to litigate in the United States for convenience. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S. Ct. 1184, 1191 (2007) ("When the plaintiff's choice is not its home forum, . . . the presumption in the plaintiff's favor 'applies with less force,'

15

for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" (quoting *Piper*, 454 U.S. at 255-56, 102 S. Ct. at 266)). Accordingly, the district court did not abuse its discretion by according the European Plaintiffs' choice of forum less deference.

Other relevant private interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witness; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508, 67 S. Ct. at 843. The location of much of the evidence of this case is in Italy. Although some evidence has already been gathered and the crash reports have been translated, the district court pointed out that Cessna disputes the tort element of causation based on intervening factors, the evidence of which can only be obtained from Italian witnesses. *See Ford*, 319 F.3d at 1308 ("Perhaps the most important 'private interest' of the litigants is access to evidence."); *see also Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1430 n.2 (11th Cir. 1996) (rebuffing the contention that a French accident report was an adequate substitute for defendant's desire to present live French witnesses to establish the cause of a foreign airplane crash). The district court also found there were "practical problems" that complicated trying the case in the United States, including

16

differing liability issues and damages among the Plaintiffs and the fact that some Plaintiffs have already litigated and continue to litigate a similar suit in Italy concerning the crash.

## C.  Public Interest Factors

After discussing the private interests and having found them in or near equipoise, the district court analyzed the public interest factors weighing in favor of dismissal of the European Plaintiffs' case.  Public interest factors include each forum's interest in hearing the case, the administrative burdens placed on the Court in hearing the case, and the need to apply foreign law.  *See Gilbert*, 330 U.S. at 508-09, 67 S. Ct. at 843.  The district court found that Italy has a strong interest in resolving this case, especially because the tragic event occurred on Italian land.  The court expressed concern that evaluating liability and damages issues as to each of these European Plaintiffs would place a heavy burden on its limited resources.  Finally, after conducting a two-day Italian law hearing, the court concluded application of Italian law to the numerous issues in this case weighed in favor of dismissal.  *See Sigalas,* 776 F.2d at 1519 ("The need to resolve and apply foreign law should 'point the trial court towards dismissal.'" (quoting *Piper*, 454 U.S. at 260, 102 S. Ct. 252)).

In the trial court's analysis, these public interest factors tipped the balance in favor of a trial in Italy for the European Plaintiffs' case. The district court engaged in a thorough, reasonable analysis of the relevant private and public interest factors, and it did not abuse its discretion in finding the factors weighed in favor of dismissal of the European Plaintiffs.

*D. Conditions of the Dismissal*

We modify the dismissal order to require Cessna to submit to the jurisdiction of the Italian courts and waive the statute of limitations. *See* 28 U.S.C. § 2106 (giving appellate courts the authority to modify). We further modify the dismissal order to provide that any case dismissed pursuant to the district court's order may be reinstated in the event that jurisdiction to entertain such a case is rejected by a final decision of a court in Italy. We note that conditioning the dismissal does not destroy finality, nor leave the case pending in the district court. *See Leon*, 251 F.3d at 1316; *Sigalas*, 776 F.2d at 1515-16.

## V. CONCLUSION

Echoing the district judge's sentiments, we are extremely sympathetic to those affected by this tragic airplane crash. Still, our sympathy for the victims and their families cannot alter our conclusion that the district court did not abuse its discretion in dismissing the European Plaintiffs on the grounds of *forum non*

18

*conveniens*.  Accordingly, the district court's order is modified as provided in this opinion and, as modified, is affirmed.

**AFFIRMED IN PART, DISMISSED IN PART.**