[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15551

_____

D.C. Docket No. 2:10-cv-03314-AKK

J.W.,
by and through his next friend, Tammy Williams,
G.S.,
by and through her next friend, LaTonya Stearns, et al.,

Plaintiffs-Appellees,

versus

A. C. ROPER,
in his individual and official capacity as Chief
of the Birmingham Police Department,
J. NEVITT,
Officer, in his individual capacity, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 19, 2013)

Before MARTIN and BLACK, Circuit Judges, and EDENFIELD,[*] District Judge.

PER CURIAM:

Birmingham Police Chief A.C. Roper and several individual School Resource Officers appeal the district court's partial denial of their motion for summary judgment. On appeal, Chief Roper argues he is not liable in his official capacity under 42 U.S.C. § 1983. The individual Resource Officers argue (1) they are entitled to qualified immunity against Plaintiffs' § 1983 constitutional claims, (2) they are entitled to state-agent immunity against Plaintiffs' state-law outrage claims, and (3) even if they are not entitled to state-agent immunity, Plaintiffs' outrage claims are meritless and should not survive summary judgment. We affirm the district court's decision that the Resource Officers are not entitled to qualified immunity, and dismiss the remaining claims for lack of appellate jurisdiction.[1]

## I. JURISDICTION

*A. Chief Roper's Appeal*

---

[*] The Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia, sitting by designation.

[1] We review the denial of summary judgment de novo, applying the same legal standard as the district court. *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003). Also, we have an independent obligation to determine whether appellate jurisdiction exists in each case, regardless of whether the parties raised that issue. *Reaves v. Sec'y Fla. Dep't of Corr.*, 717 F.3d 886, 905 (11th Cir. 2013).

Plaintiffs' only remaining claim against Chief Roper alleges that he is liable in his official capacity because the Birmingham Police Department's policy and custom on the use of mace in Birmingham schools caused their constitutional injuries.[2] The district court concluded the Plaintiffs' allegations and supporting evidence created a genuine issue of material fact on this issue, and therefore Chief Roper was not entitled to summary judgment. Roper contends the district court erred because the Plaintiffs' § 1983 claims are meritless and cannot establish his official liability.

For several reasons, we do not have jurisdiction over Roper's claims at this interlocutory stage. *See, e.g.*, *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 41–43 (1995). Roper appeals a non-final ruling that denied him summary judgment on a "defense to liability"—not "*immunity from suit*." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 530 (1985) (emphasis in original). Unlike the Resource Officers' qualified-immunity appeal, Roper's defense to liability is not "effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526. The district court can revisit the merits of Roper's defense before submitting the case to the jury, and Roper can appeal any adverse final judgment on the official-capacity issue. *See, e.g.*, *Swint,* 514 U.S. at 41–43 (stressing that defenses to liability are generally not

---

[2] The district court granted Chief Roper qualified immunity for those claims brought against him in his individual capacity. Because Plaintiffs have not cross-appealed that ruling, it is not before us.

3

subject to interlocutory review because "[a]n erroneous ruling on liability may be reviewed effectively on appeal from final judgment").

Moreover, this Court does not have pendent-party appellate jurisdiction over Roper's official-capacity appeal. *See, e.g.*, *id.* at 43–51. Pendent-party appellate jurisdiction exists "only under rare circumstances." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1379 (11th Cir. 2009). This Court has pendent-party appellate jurisdiction over otherwise nonappealable claims when they are "'inextricably intertwined' with the appealable decision or when 'review of the former decision is necessary to ensure meaningful review of the latter.'" *Id.* (quoting *Swint*, 514 U.S. at 51) (brackets omitted).

Roper argues the official-capacity claim is "inextricably intertwined" with the Resource Officers' qualified-immunity appeal. In his view, both claims ask whether the Plaintiffs' constitutional rights were violated and both claims examine Roper's mace policies. As a result, the two claims "significantly overlap," as we must decide whether he is liable in his official capacity when reviewing the Officers' qualified-immunity appeals.

Roper's argument fails as a matter of law. *See, e.g.*, *Jones v. Cannon*, 174 F.3d 1271, 1292–93 (11th Cir. 1999). Official-capacity liability and qualified immunity involve fundamentally different inquiries, even if they arguably share some common ground. *See id.* To survive summary judgment on the official-

4

capacity claim, Plaintiffs must present evidence (1) their constitutional rights were violated; (2) Roper's policy is unconstitutional because it had no school-specific directives[3] and Roper's training customs reflected "deliberate indifference"; and (3) Roper's policy and custom were the "moving force" behind the Plaintiffs' constitutional violations. *See City of Canton v. Harris*, 489 U.S. 378, 385–92 (1989). But to survive summary judgment on the qualified-immunity issue, Plaintiffs must present evidence (1) the Officers violated their constitutional rights; and (2) those rights were "clearly established" when the violations occurred. *See Hope v. Pelzer*, 536 U.S. 730, 736–41(2002).

The official-capacity and qualified-immunity appeals overlap only on the question of whether the Resource Officers violated the Plaintiffs' constitutional rights. In deciding that question, however, we need not address the constitutionality of Roper's policies, or whether those policies were the "moving force" behind the Plaintiffs' injuries. Moreover, the constitutionality of Roper's

---

[3] At oral argument, Plaintiffs' counsel asserted a different theory of liability for their policy-based claim. Counsel alleged Roper's mace policy was unconstitutional writ large—against students or adult-arrestees—and that they were seeking to enjoin the use of mace against *any* individual subject to police control. However, no such theory of liability appears in Plaintiffs' complaint or motion opposing summary judgment. In those filings, Plaintiffs explicitly denied that they were "challeng[ing] the use of mace on its face," and asserted instead they were "challeng[ing] Defendants' policy because it places no actual limits on the officers' discretion *to deploy mace against students*." *See* Pls.' Resp. Defs.' Mot. Summ. J. at 27 (emphasis added); *see also* Pls.' Third Am. Compl. at ¶¶ 185–90 (same).

If they so desire, Plaintiffs may move the district court for leave to amend their complaint under Fed. R. Civ. P. 15(a)(2). They may not amend their complaint or adopt a new theory of liability before this Court at oral argument, however. *Cf. Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). As such, we analyze Plaintiffs' claims as they have been presented throughout this litigation and do not address any newly asserted theories.

policies is not pertinent to determining whether the Officers acted within their discretionary authority. After all, a mace policy could be constitutional, and yet an individual officer could still violate a student's constitutional rights or act outside the policy's terms. Vice versa, a mace policy could be unconstitutional on its face, and yet an individual officer could still behave constitutionally and do so within his discretionary authority. Therefore, Roper's official-capacity appeal is not "inextricably intertwined" with the Officers' qualified-immunity appeals. *Cf. Bryant v. Jones*, 575 F.3d 1281, 1301–02 (11th Cir. 2009) (holding that a question of "issue preclusion" was "inextricably intertwined" with qualified-immunity issues "because resolution of the preclusion issue in favor of the defendants w[ould] necessarily dispense of any need to pass on the immunity issues").

Indeed, Roper's jurisdictional argument is foreclosed by our decision in *Jones*. *See* 174 F.3d at 1293. Just as in this case, *Jones* involved separate defendants bringing separate official-capacity and qualified-immunity claims. *Id.* Although the defendants' claims shared a common question—*i.e.*, whether the plaintiff's constitutional rights were violated—one common question did not make the claims "inextricably intertwined." *See id.* at 1279, 1283–86, 1293.

The same conclusion follows in this case. Like *Jones*, the only point of overlap between the official-capacity and qualified-immunity claims is the question of whether the Officers violated the Plaintiffs' constitutional rights. As in

*Jones*, no other issue is necessarily shared among the claims. Therefore, like *Jones*, Roper's official-capacity appeal is not inextricably intertwined with the Officers' qualified-immunity appeal.

Accordingly, we do not have pendent-party appellate jurisdiction over Roper's official-capacity appeal. Such a claim is merely a defense to liability, which is generally not subject to interlocutory review. *See Mitchell*, 472 U.S. at 526–30. Also, Roper's appeal is not inextricably intertwined with the other defendants' qualified-immunity appeals, because resolving Roper's claim would not "necessarily dispense of any need to pass on the immunity issues." *Cf. Bryant*, 575 F.3d at 1301–02.

## B. The Resource Officers' State-law Claims

The record makes clear we do not have appellate jurisdiction at this stage over the Officers' state-law claims. On appeal, the Resource Officers make two arguments involving state law. First, the Officers contend they are entitled to state-agent immunity against the Plaintiffs' outrage claims under Alabama law. Second, the Officers contend that, even if they are not immune from suit under state law, the Plaintiffs' outrage claims are meritless. Based on these arguments, the Officers ask us to both reverse the district court and direct it to enter summary judgment in their favor.

7

Regardless of whether the Officers' claims are correct or incorrect, we do not have jurisdiction over their state-law appeals.[4]  Ordinarily, we have appellate jurisdiction over only "those judgments, orders, or portions thereof which are specified in an appellant's notice of appeal."  *Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1313 (11th Cir. 2004) (internal quotation marks omitted).  Here, the Officers' Notice of Appeal refers only to that portion of "the Order denying their summary judgment motion on *qualified immunity*."  Their Notice does not indicate an appeal of any state-law issue specifically.  Nor does it specify an appeal of the district court's order generally, such that all of the issues resolved therein would be reviewable.

Under our precedent, issues not specified in a notice of appeal are reviewable in two situations.  *See C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1056 (5th Cir. 1981).[5]  First, we may review unspecified issues when the intent to appeal was "apparent" and review would not "prejudice"

---

[4] As an initial matter, the merits of the outrage claim are not properly before us, since the Officers' claim is merely a defense to liability rather than immunity from suit.  *See Mitchell*, 472 U.S. at 526–30.  Moreover, the outrage claim is not sufficiently interwoven with any reviewable issue.  *See, e.g.*, *Grider v. City of Auburn*, 618 F.3d 1240, 1268 n.41, 1269 n.42 (11th Cir. 2010) (declining to address the merits of state-law claims because they were not necessary to deciding immunity issues).

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

8

the adverse party.  *Id.*  Second, we may review unspecified issues when they are "inextricably entwined" with specified issues.  *Id.*

In this case, the Officers' unspecified state-law claims satisfy neither criterion for review.  The Officers' intent to appeal the state-agent immunity and outrage issues was not apparent.  *See id.*  Rather, "by specifically listing only" one part of a multi-issue district court order, the Officers conveyed an "intent *not* to appeal" other unspecified issues and rulings.  *See Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1374 (11th Cir. 1983) (emphasis in original).

Additionally, the state-law issues are not inextricably entwined with qualified immunity.  Qualified immunity and Alabama's outrage tort, for example, share no common questions of law.  *Compare Hope*, 536 U.S. at 736–41 (outlining the elements of qualified immunity), *with Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990) (outlining the elements of outrage as whether the officers' conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it).  Further, although qualified immunity and state-agent immunity ask a similar question about discretionary authority, they are not sufficiently entwined.  Unlike qualified immunity, state-agent immunity does not turn on the existence of a "clearly established" constitutional right; instead, it asks whether the officers acted willfully or maliciously.  *See Ex parte Kennedy*, 992 So.

9

2d 1276, 1281 (Ala. 2008).  Because we need not reach that distinctive question in resolving the qualified-immunity appeals, state-agent immunity is not inextricably entwined with qualified immunity.

As a result, we do not have jurisdiction over the Officers' appeals involving state law.  Indeed, the Officers' failure to specify the state-law issues in their Notice of Appeal is not merely an "informality of form."  *See* Fed. R. App. P. 3(c)(4).  To the contrary, although we liberally construe notices of appeal, the rules governing such notices are "jurisdictional in nature, and their satisfaction is a prerequisite to appellate review."  *Smith v. Barry*, 502 U.S. 244, 248 (1992).  Notices of appeal must "designate the judgment, order, or part thereof being appealed," Fed. R. App. P. 3(c)(1)(B), and when a notice specifies a particular ruling or issue, we infer others are not part of the appeal, *see White v. State Farm Fire & Cas. Co.*, 664 F.3d 860, 864 (11th Cir. 2011).  Because the Officers' Notice of Appeal designated only the qualified-immunity ruling and conspicuously omitted the state-law issues, it is appropriate to dismiss the state-law claims for lack of appellate jurisdiction.  *See* Fed. R. App. P. 3(a)(2).

## II. QUALIFIED IMMUNITY

Finally, we have jurisdiction to review and we affirm the district court's order denying the Resource Officers' motion for qualified immunity.  *See Mitchell*, 472 U.S. at 526–30.  Only six of the eight named Plaintiffs still seek monetary

10

damages from the Resource Officers under § 1983:  K.B., B.D., T.L.P., T.A.P., B.J., and G.S.[6]  The facts set out by the district court accurately represent the record on summary judgment, and viewing those facts in the light most favorable to the Plaintiffs, we affirm the district court's denial of qualified immunity.  *See, e.g.*, *Vinyard v. Wilson*, 311 F.3d 1340, 1347–55 (11th Cir. 2002).

Only one of the macings requires additional discussion.  With regard to Officer Clark, the denial of qualified immunity is based on the second macing of G.S.  Viewing the facts in the light most favorable to G.S., Officer Clark maced G.S. a second time when she was incapacitated, non-resistant, and writhing in pain on the ground.[7]  Although the first macing was reasonable due to G.S.'s initial resistance, that resistance does not shield Officer Clark from liability when he used force after the resistance and risk of flight was over.  *Cf. Gray v. Bostic*, 458 F.3d 1295, 1307 (11th Cir. 2006) (concluding the handcuffing of "a compliant, nine-year-old girl for the sole purpose of punishing her was an obvious violation of [her] Fourth Amendment rights").  Accordingly, we affirm the district court's

---

[6] The other Plaintiffs—J.W. and P.S.—did not file a notice of appeal and are not involved in the qualified-immunity appeals because they have either abandoned or voluntarily dismissed their § 1983 claims for damages.  J.W. and P.S. remain part of this case only as named representatives of the class action seeking declaratory and injunctive relief against Chief Roper in his official capacity.

[7] Although G.S.'s testimony could be construed to imply that Officer Clark maced her two times in quick succession, G.S.'s testimony must be viewed in the light most favorable to her at this point in the litigation.

denial of qualified immunity to Officer Clark, as well as the other Resource Officers.

## III. CONCLUSION

We **AFFIRM** the district court's denial of the Resource Officers' motion for qualified immunity, and **DISMISS** Chief Roper's appeal, as well as the Officers' state-law appeals, for lack of appellate jurisdiction.